McEWING *vs.* BERTINE.

*In the matter of the Estate of* DUNCAN McEWING, *deceased.*

THE testator, who was engaged in business as a manufacturer, and owned a cotton mill, after devising to his wife a life-interest in certain lands, gave the remainder of his property to his children, " to be valued," and " to be divided" into a certain number of shares, and " the several divisions" to take place as his sons " severally" attained majority, and his daughters arrived at full age or married. He also provided, that three of his children named should " have the same advantages of education" as the others had enjoyed; and that his cotton mill should be under the direction of his son, and J. D., the profits to be appropriated to the use of the testator's family.—*Held*, that the devise of the residue was vested in the children on the testator's decease, subject first to the provision for the education of his children, and secondly, to the direction respecting the management of the mill. The children were to be educated at the charge of the estate, and the profits of the factory were to accrue to the benefit of the family, that is, his children, to whom the property had been previously given—the widow having other provisions under the will.

The clause as to the management of the factory is a mere direction how the estate was to be managed until a distribution should be made, and does not vary the interests of the devisees.

Each one of the devisees, on attaining majority, or the daughters on marriage, can demand their shares, and in such case the estate must be closed.

M'EWING *vs.* BERTINE.

SAMUEL D. VANDERHEYDEN, *for Devisees.*

I. John D. McEwing having attained his majority, is entitled to his share of the estate, and also of the interest of his deceased brother.

II. The business should be closed by the terms of the will, also as a matter of expediency, the net profits on the $60,000 invested in stock, capital, machinery, and buildings, not being over 7½ per cent., with all the risks of trade inclusive.

III. The trust, for the conduct of the business, if it was not to terminate upon the majority of the heir, did terminate upon the death of Duncan McEwing, Jr. It was joint and personal in its nature, and not susceptible of the appointment of another in his place.

JAMES H. HEDLEY, *for Administrator.*

I. The intention of the testator evidently was to have the business of the factory continued after his decease for the support and education of his family, until the youngest child became of age.

II. If the first proposition be true, then the business of the estate cannot be closed and the capital divided until the youngest child attains majority, or dies.

III. John D. McEwing is entitled not to a share of the estate now, but only to a division of the profits of the business.

IV. The Surrogate is to determine whether, under the will, each heir is entitled to his share of the estate severally to be divided upon attaining majority or marriage.

V. Would not the intention of the testator be frustrated if each heir claims his share, and division takes place? It would virtually put a stop to the business.

VI. The third point of attorney for John D. McEwing is untenable.

VII. If John D. McEwing is entitled to his share of the estate, then all the heirs of age or married are entitled to their shares also.

VIII. If division takes place, then the heirs are severally entitled to their proportions from the time of their attaining majority or marriage.

THE SURROGATE.—The testator was engaged in business as a manufacturer at Paterson, New Jersey, where he owned a cotton mill. After devising to his wife a life estate in certain property in this city, he disposed of the residue of his estate as follows: " After all my just debts and funeral expenses are paid, I leave and bequeath to my children the remainder of my property, namely—my cotton mill in Paterson, New Jersey, known by the name of Harmony Mill, together with my leasehold property in Bedford Street and Barrow Street, to wit., Nos. 94, 96, and 98, in Bedford Street, and 134, 136, 138 and 140, in Barrow Street,—all this property to be sold, and whatever money and effects be on hand at the time of my death included, all to be divided in seven equal shares, of which my son Duncan McEwing is to have one share, my daughter Lydia McEwing one share, my son John McEwing one share, my daughter Janet McEwing one share, my daughter Caroline McEwing two shares, and my son Henry Clay McEwing one share—the three last named to have the same advantages of education as the three former have had—Harmony Mill, at Paterson, New Jersey, after

my decease, to be under the direction of my son Duncan Mc-Ewing and John Danskin, the profits of which to be appropriated to the use of my family. The several divisions can take place after my decease, when my sons arrive severally at the age of twenty-one, and my daughters when they arrive at the same age or get married."

The testator died in the year 1848, and his son Duncan died in July, 1850. The cotton-mill has been kept running until the present period. Lydia, John, and Janet have attained majority since their father's decease. Caroline and Henry still remain under age, and one of the daughters has married.

The devise of the residue of the testator's estate vested in his sons and daughters on his decease, subject in the first place to the proviso for the education of the three children last named, and in the second place, to the direction respecting the management of the mill. Those children were to be educated at the charge of the estate, and then the profits of the factory enured to the benefit of the family. In view of the provision made for the widow, I understand the testator, by the term family, to have intended his children (1 *Roper,* *p.* 138), to whom the property had been previously given. The question then arises, how long the property is to remain undivided. The devise being absolute and vested, the parties in interest would be entitled to an immediate division, except for the clause as to the management of the factory. Although by its terms the profits of the business are appropriated to the use of the family, yet the shares of the children are not varied, and I take this provision simply as a direction how that portion of his estate was to be managed by certain persons for the benefit of the devisees until a distribution should be made. That distribution the testator himself expressly provides for, and his language very clearly shows that as his children should attain full age, or in the case of his daughters should marry, each one should take out his or her share. These distributions he terms " the several divisions." The contingency on which the divisions are directed by the

will having happened as to three of the children, the business must be closed up, and the parties entitled, be paid their shares of the estate.